UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **JEREMY DURASO** | **CASE NO. 2:21-CV-01561** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **GEOVERA ADVANTAGE INSURANCE CO ET AL** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 27] filed by defendant GeoVera Specialty Insurance Company, seeking dismissal of plaintiff's claims for breach of insurance contract and bad faith. Plaintiff Jeremy Duraso opposes the motion. Doc. 29.

### I.
### BACKGROUND

This suit arises from damage inflicted by Hurricane Laura, which made landfall in Southwest Louisiana on August 27, 2020. The storm allegedly caused significant damage to the home of Jeremy Duraso in Sulphur, Louisiana. Doc. 1. At all relevant times this home was insured under a policy issued by GeoVera which provides in relevant part the following types of coverage:

| Coverage Type | Limit of Liability |
|---|---|
| Coverage A (Dwelling) | $200,000.00 |
| Coverage B (Other Structures) | $20,000.00 |
| Coverage C (Personal Property) | $100,000.00 |
| Coverage D (Loss of Use) | $40,000.00 |

Doc. 1, att. 5. The policy also provides as follows:

> **R. Concealment or Fraud**
> 2. With respect to loss caused by a peril other than fire and with respect to all "insureds" covered under this policy, we provide no coverage for loss if, whether before or after a loss, one or more "insureds" have:
> > a. Intentionally concealed or misrepresented any material fact or circumstance;
> > b. Engaged in fraudulent conduct; or
> > c. Made false statements;
> relating to this insurance.

Doc. 27, att. 8, p. 19.

Plaintiff reported his loss to GeoVera on August 27, 2020. Doc. 27, att. 2, p. 144. GeoVera issued a $1,500 advance to him on September 1 and sent Premier Adjusting ("Premier") to inspect the property on its behalf in September 2020. *Id.* at 148. On October 5, 2020, GeoVera sent plaintiff Premier's completed report and issued payments in the amount of $38,003.72, bringing the total amount paid to $39,503.72. *Id.* at 147–49. This payment was based Premier's finding of covered damage necessitating replacement of the dwelling's porch and attached carport awning roofs, replacement of the right roof slope of the main house, repairs to the ceiling and walls of rooms on the right side of the house, and repairs to the exterior siding, trim, window, and porch floor. Doc. 27, att. 3. Premier also noted:

> The insureds stated the living room floor was cracked during the windstorm. However, we did not include it, because evidence suggests it was already cracked, due to excessive settlement of the concrete slab, resulting from an improperly installed slab floor.
> The insured also alleged the home was lifted up off its support blocks, causing the blocks to crack. However, evidence suggests the support blocks have been cracked and exposed for months or years, noting there is dirt and mold on the blocks.

*Id.* at 2. Plaintiff disputed these findings and requested an inspection by a structural engineer. GeoVera then retained Keystone Engineers ("Keystone"), which inspected the home on October 21, 2020, and issued a report nine days later. Doc. 27, att. 6. Keystone opined that "[t]he interior slab cracks and separations were due to long-term differential foundation movement and were not due to wind." *Id.* at 4. GeoVera explained these findings by a letter transmitted on or about November 14, 2020, in which it coverage for the interior slab cracks. Doc. 27, att. 2, p. 149; *see id.* at Exh. 7, pp. 202–06.

Meanwhile, plaintiff retained Ahmed Abdel-Mohti to provide a structural inspection of the property. Mohti testified that Duraso told him that the slab was in a different condition than it had been before the storm and that he had never seen cracks in the foundation before the hurricane. Doc. 27, att. 4, p. 47. In his report, however, Mohti recorded: "It seems the cracks were existing and may have widened due to the hurricane movement." *Id.* at 87. To this end he noted that it was "very hard for a hurricane event to create brand-new cracks in a slab foundation" but that the event could have caused widening of existing cracks and even formation of new cracks in an area where previous cracks existed. *Id.* at 87–88.

Plaintiff filed suit in this court against GeoVera on March 18, 2021, raising claims of breach of insurance contract and bad faith. Doc. 1. In his deposition, taken on May 3, 2022, he testified that he had removed carpet in the living room of the house before the hurricane but had not observed any cracks in the slab. *Id.* at 49–50. In connection with the lawsuit, he also retained Shannon Spell as his engineer. *See* doc. 27, att. 5. Spell inspected the property in November 2021. *Id.* at 94. In contrast to plaintiff's statements to Mohdi and

in his own deposition, Spell testified based on segments of his report that plaintiff had told him he observed cracks in the foundation before the storm:

> Q: The next note says, "Prior to the storm, the owner removed his carpet floor and noticed there were hairline cracks, but no significant separation." Do you see that?
> A: Yes.
> Q: Where did that information come from?
> A: That came from Mr. Duraso.

*Id.* at 110–11. Plaintiff's personal friend, residential contractor Jeremy Burton, also testified that he had noticed older cracks in the slab on social visits to the home. *Id.* at 112–13. He further testified that he had seen a big crack in the living room slab, but that he believed this one occurred during the hurricane. *Id.* Duraso confirmed in his deposition that only the living room, and not the kitchen or dining room, had carpet flooring. Doc. 27, att. 1, p. 48.

GeoVera now moves for summary judgment under the concealment/fraud provisions of the policy, asserting that Duraso has made a material misrepresentation regarding his awareness of prior damage and thereby voided his coverage. Doc. 27. It also moves for summary judgment on the bad faith claims, asserting that it has timely initiated investigation and paid all undisputed amounts of the claim. Duraso opposes the motion, arguing that he did not mislead GeoVera intentionally or otherwise and that genuine issues of material fact preclude summary judgment on his bad faith claim. Doc. 29.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### LAW & APPLICATION

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *Cates v. Sears, Roebuck*

*& Co.*, 928 F.2d 679, 687 (5th Cir. 1991). Louisiana law provides that an insurance policy is a contract and that its provisions are construed using the general rules of contract interpretation in the Louisiana Civil Code. *Hanover Ins. Co. v. Superior Labor Svcs., Inc.*, 179 F.Supp.3d 656, 675 (E.D. La. 2016). "When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and the courts must enforce the contract as written." *Sims v. Mulhearn Funeral Home, Inc.*, 956 So.2d 583, 589 (La. 2007) (citing La. Civ. Code art. 2046). Additionally, an insurer may avoid coverage on grounds of material misrepresentation only where the statements were made with intent to deceive. *Chavez v. Homesite Ins. Co.*, 834 F.Supp.2d 504, 507 (E.D. La. 2011) (citing *Cousin v. Page,* 372 So.2d 1231, 1233 (La. 1979)). Because there will rarely be direct evidence of intent, this element "must be determined from surrounding circumstances indicating the insured's knowledge of the falsity of the representations . . . and his recognition of the materiality of his misrepresentations, or from circumstances which create a reasonable assumption that the insured recognized the materiality." *Id.* at 508.

GeoVera's misrepresentation argument centers on Duraso's allegedly inconsistent testimony regarding his prior notice of cracks in his living room slab. As evidence of his prior knowledge it points to (1) Duraso's statement to engineer Shannon Spell that he noticed hairline cracks in the living room slab prior to the storm and (2) the testimony of Duraso's friend Jeremy Burton that he (Burton) had seen older cracks in the home. The location of these older cracks might be inferred based on Duraso's statement in his deposition that he had removed carpet in the living room and not observed any cracks in

the slab and by evidence showing that only the living room was carpeted. However, the only direct admission from Duraso relates to the existence of hairline cracks while Burton states that he saw a much larger crack in the slab after the storm. Given the disparity between the pre- and post-storm damage to the slab, the issues of materiality and intent would require an inquiry into Duraso's subjective belief as to the relevance of the hairline cracks. The court cannot accomplish this without weighing the testimony of the parties and making decisions as to credibility. Accordingly, summary judgment must be denied on this claim.

  Alternatively, GeoVera argues that it is entitled to summary judgment on Duraso's bad faith claims because its need to investigate discrepancies about the prior existence of foundation cracks provided a reasonable basis for denying further payments. Duraso, however, disputes both the timeliness of the payments and whether the full undisputed amount was paid. He notes that GeoVera did not provide payment for the full amount of exterior or HVAC repairs according to his contractor's estimate. Whether GeoVera's suspicions of misrepresentations regarding a structural damage claim provided a reasonable basis for it to halt payment on other claims, and whether it had any other basis to dispute these amounts has not been adequately briefed for the court to rule on summary judgment. Accordingly, the motion will be denied in this respect as well.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 27] will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on the 8th day of September, 2022.

_____
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE