UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**JEREMY DURASO**            **CASE NO. 2:21-CV-01561**

**VERSUS**            **JUDGE JAMES D. CAIN, JR.**

**GEOVERA ADVANTAGE INSURANCE CO ET AL**            **MAGISTRATE JUDGE KAY**

## MEMORANDUM RULING

Before the court is a Motion for Partial Summary Judgment [doc. 36] filed by plaintiff and seeking adjudication of his claims of bad faith against defendant GeoVera Specialty Insurance Company ("GeoVera"). GeoVera opposes the motion. Doc. 39.

### I.
### BACKGROUND

This suit arises from damage inflicted by Hurricane Laura, which made landfall in Southwest Louisiana on August 27, 2020. The storm allegedly caused significant damage to the home of Jeremy Duraso in Sulphur, Louisiana. Doc. 1. At all relevant times this home was insured under a policy issued by GeoVera which provides in relevant part the following types of coverage:

| Coverage Type | Limit of Liability |
|---|---|
| Coverage A (Dwelling) | $200,000.00 |
| Coverage B (Other Structures) | $20,000.00 |
| Coverage C (Personal Property) | $100,000.00 |
| Coverage D (Loss of Use) | $40,000.00 |

Doc. 1, att. 5.

Plaintiff alleges that his home remains unrepaired due to GeoVera's failure to properly adjust the claim and timely tender the full amounts for repair of property and replacement of damaged or lost contents. Doc. 36, att. 2, p. 1. He also maintains that GeoVera representatives misrepresented pertinent facts and policy provisions, resulting in underpayment of his claim. *Id.* at 4–6. He filed suit in this court against GeoVera on March 18, 2021, raising claims of breach of insurance contract and bad faith. Doc. 1.

The case proceeded through the streamlined settlement process outlined in the court's Case Management Order for first-party insurance claims arising from Hurricanes Laura and Delta, but did not resolve. It is now set for jury trial before the undersigned on November 7, 2022. Doc. 21. The undersigned previously denied a motion for summary judgment filed by GeoVera, where it asserted that plaintiff had voided the policy due to certain material misrepresentations about preexisting damage to his home. Docs. 32, 33. Plaintiff now brings this motion for partial summary judgment, asserting that there is no genuine issue of material fact as to his bad faith claims and that he is entitled to an award of statutory penalties and attorney fees as outlined in Louisiana Revised Statutes §§ 22:1892 and 1973. Doc. 36. GeoVera opposes the motion. Doc. 39.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact.

*Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### LAW & APPLICATION

**A. Governing Law**

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). Louisiana law provides that an insurance policy

is a contract and that its provisions are construed using the general rules of contract interpretation in the Louisiana Civil Code. *Hanover Ins. Co. v. Superior Labor Svcs., Inc.*, 179 F.Supp.3d 656, 675 (E.D. La. 2016). The words of the policy are given their generally prevailing meaning and "interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Coleman v. Sch. Bd. of Richland Par.*, 418 F.3d 511, 516–17 (5th Cir. 2005) (citing La. Civ. Code arts. 2047, 2050). Ambiguities in the policy must be construed against the insurer and in favor of coverage. *Id.* The court resolves an ambiguity by asking "how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." *Id.*

Louisiana Revised Statute § 22:1892 makes an insurer liable for penalties and attorney fees in certain circumstances based on its bad faith handling of a claim. To prevail under this statute, the insured must show that (1) the insurer received satisfactory proof of loss; (2) the insurer failed to tender payment within 30 days of receiving this proof; and (3) the insurer's failure to pay is "arbitrary, capricious, or without probable cause." *Guillory v. Lee*, 16 So.3d 1104, 1126 (La. 2009). Similarly, Louisiana Revised Statute § 22:1973(B)(5) provides for an award of penalties when an insurer fails to pay within 60 days and that failure is "arbitrary, capricious, or without probable cause."

Under the first factor, proof of loss, Louisiana courts set no strict requirement as to form and instead only require that the insurer "obtain[] sufficient information to act on the claim." *Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.*, 597 F.3d 729, 739 (5th Cir. 2010) (quoting *Sevier v. U.S. Fid. & Guar. Co.*, 497 So.2d 1380, 1384 (La. 1986)). On the third, compliance with the statute means that the insurer "must pay any undisputed amount over

which reasonable minds could not differ." *Dupree v. Lafayette Ins. Co.*, 51 So. 3d 673, 698 (La. 2010). The insurer does not act arbitrarily or capriciously, however, if it "has a reasonable basis to defend the claim and acts in good-faith reliance on that defense." *Reed v. State Farm Mut. Auto. Ins., Co.*, 857 So. 2d 1012, 1021 (La. 2003).

### B. Application

Plaintiff alleges that GeoVera violated the penalty statutes by (1) misrepresenting pertinent facts and policy provisions, (2) never making payment on his contents claim, (3) failing to timely tender the amount due, and (4) failing to make any offer to settle the claim. Doc. 36, att. 2. GeoVera maintains that genuine issues of material fact exist as to plaintiff's entitlement to coverage as well as to other allegations made by plaintiff, and that plaintiff's allegations relating to Hurricane Delta (*infra*) are beyond the scope of the petition and not properly before the court. Doc. 39.

#### 1. Misrepresentations

Plaintiff first asserts that GeoVera misrepresented to him the need to file a separate claim for the damages he suffered in Hurricane Delta. He states that he was required to pay a new $4,000 deductible for damage allegedly caused by Hurricane Delta, but asserts that these damages ought to have been subject to the same claim and deductible as the one already filed for Hurricane Laura under GeoVera policy. Doc. 36, att. 5 (Delta loss report).

An insurer's misrepresentation "of pertinent facts or policy provisions relating to any coverages at issue" to the insured constitutes a breach of its duty of good faith. La. Rev. Stat. § 22:1973(B)(1); *see, e.g.*, *Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.*, 597 F.3d 729, 740 (5th Cir. 2010). Accordingly, an insurer may be found liable under the statute

for misrepresenting or failing to disclose facts that are not related to the insurance policy's coverage so long as they are pertinent. *Kelly v. State Farm Fire & Cas. Co.*, 169 So.3d 328, 344 (La. 2015).

Plaintiff points to an email sent by claims manager Joseph Belton to other GeoVera employees, ostensibly reflecting a company-wide view that there was no need for an insured to file a Delta claim if it arose from unrepaired damage on an existing Hurricane Laura claim:

> Just like we discussed with TS Beta, if the insured has an existing claim with unrepaired damage from Hurricane Laura, and is then affected by Hurricane Delta, if there's no new damage, there is no reason to file a new claim. In other words, if Delta damages already damaged building materials, there is no reason to file a claim.
> If however Delta brings new damage to areas that were not affected by Laura, a new claim will need to be filed.

Doc. 36, att. 3, p. 9. GeoVera's corporate representative elaborated:

> A. Yes. This is another example of GeoVera trying to do what's best for the customer, reduce the number of claims filed on their property, reduce the possibility of what they would pay out of pocket for deductibles, those sorts of things.
> So if it's just exacerbated "Laura" damage from the passing of "Delta," it would just [be] that "Laura" damage that [has] likely already been assessed and estimated for. So no – there was no need for a separate claim because that ceiling that was damaged by "Laura" and "Delta" was already being replaced or repaired under the "Laura" claim. So, there's no need to file another claim and have another deductible for damage that was already being addressed.
> Q. Okay. Let's use your example. The wall is damaged – was already damaged due to the water from "Laura." Let's say that water came in through the roof. Okay. "Delta" comes, blows the tarp away. Water comes in that same hole, gets that same roof – that same wall but spreads out a little bit more. Is that new damage or is that damage from "Laura"?
> A. Well, not to sound like a broken record here but that would be another case-by-case, claim-by-claim [issue] because it may have been that that damage – the wall – the whole room was estimated for, let's say,

repainting or the damage to the one wall extended into the next or, you know, where all of the walls would have been addressed under "Laura" already. That may not need to be addressed under "Delta" or it would be a case of, well, this room was already being addressed, we'll just add some additional drywall for the walls or for the ceiling, whatever the case, and it's already being painted. So, it's just, you know, a supplemental payment of however much.
   Q. Okay. Same scenario, same roof damage, trap blows it off, same wall, that water travels to the flooring and messes up laminate flooring that needs to be replaced. Is that "Laura" damage or is that "Delta" damage?
   A. Because the flooring was not affected before, given your scenario, potentially, I'd say potentially again, because it's claim-by-claim, case-by-case. We don't know all the circumstances, but because based on the information you're providing in your scenario, it would be – the floor was not damaged by "Laura." So, therefore, it would be new damage caused by "Delta." It could trigger a new claim.
   Q. I guess that's why I'm confused because the damage is caused by the damage from "Laura."

Doc. 36, att. 4, p. 112.

Plaintiff's loss report from Hurricane Delta states, in relevant part:

**Roof Damage:** Existing roof damage was noted which the insured stated is being addressed in his Hurricane Laura claim. The insured stated he had to re-tarp the roof after Delta. An adjustment for this re-tarping has been added.
**Exterior Damage:** Some existing exterior siding damage which the insured stated is being addressed in his Hurricane Laura claim. No new exterior damages are being reported from Delta.
**Interior Damage:** The insured makes a claim for water damage to the right side wall in the living room and kitchen/dining room.
**Kitchen:** Water penetrated through the roof and affected the drywall and kitchen cabinets. These damages were claimed in the Laura claim; however the cabinets were not water damaged and an adjustment to detach and reset them was calculated for that claim. In this claim, we credit the dollars used for those activities and substitute with the replacement of the cabinets and countertop, since the there [*sic*] is new water damage to the cabinetry. The drywall repairs are being addressed in the Laura claim. Additional damage from Delta being claimed for the misalignment of the kitchen double French doors from being wind rattled. An adjustment to plane and refit them has been calculated and no overlap to [L]aura claim.
**Living room:** [N]o additional damages from Delta.

*Id.* The statement of loss in this report does not show which repair costs were actually billed to this claim, but reflects a total replacement cash value of $8,728.70 in Delta repairs less a deductible of $4,000.00. *Id.* at 2.

Plaintiff contends that the new damage only occurred because the roof had been partially removed by Hurricane Laura, and that GeoVera should have treated the new damage as an exacerbation falling under the Laura claim. He points to the deposition of his desk adjuster, Travis Plohocky, who stated with regard to Delta damage:

> Q.     . . . . The next paragraph you go on to discuss about additional damage from Hurricane Delta. You say that Mr. Duraso indicated that the walls in the kitchen and dining room are more saturated.
> What do you take that to mean?
> A.     Based on that, I would believe that is – that there was more water damage to areas that were already damaged.
> Q.     Okay. What about the cabinets, same thing?
> A.     That's what I would believe, based on the note.
> Q.     And you saw the first adjuster's inspection report where he shows the porch roof completely torn off; is that right?
> A.     Correct.
> Q.     And that the dining room/living room area is along that wall that connects to the porch area; is that right?
> A.     Correct.
> Q.     I explained well enough for you to understand what I'm saying?
> A.     Yes.
> Q.     So, to your knowledge, was that area repaired prior to Hurricane Delta?
> A.     Not to my knowledge.
> Q.     So, if there were exposed areas of the home that was [*sic*] still exposed and water came through it, is that what you're indicating here when you talked about more saturated?
> A.     So the note would be based on what the insured was telling me. So, I'm just putting the note exactly what they're telling me.
> Q.     Did you provide any type of assessment of the damages yourself?
> A.     How do you mean "assessment"?
> Q.     So, after you reviewed the inspection reports, you reviewed photographs, you had conversations with the Durasos.

>            Did you make a determination about damages to the property yourself individually?
> A.     I did not.

*Id.* at 45–47. Plohocky also later testified that, "[i]n general practice," a Delta claim would be opened for a homeowner who already had a Laura claim. *Id.* at 93. He stated that he was unsure whether plaintiff actually had a Delta claim, and that he never reviewed the field inspector's report for that storm. *Id.* at 93–94.

GeoVera contends that any claims relating to Delta are not properly before the court, because they were not pled in the petition. These allegations, however, also concern damages potentially falling within the scope of plaintiff's Hurricane Laura claim. The court will consider the issue for the purposes of this motion.

It would appear that additional water damage to a wall previously dampened in Hurricane Laura should fall under the Laura claim. As for the intrusion of this water into the cabinetry, however, and based on the laminate flooring example put to the corporate representative, the result is not so clear. Even the distillation of this policy in Belton's email leaves room for interpretation. Accordingly, the court cannot determine on summary judgment whether any representations made on the necessity of opening a new claim constitute a misrepresentation or failure to disclose pertinent facts or coverage provisions by GeoVera.

### 2. Contents coverage

Plaintiff next asserts that GeoVera is liable under the penalty statutes because it never remitted payment on his contents claim. He alleges that he produced a contents worksheet to GeoVera on August 9, 2021, but that GeoVera has failed to adjust the loss.

The document attached by plaintiff is undated, but contains a list of dozens of items (primarily electronics and appliances) with purchase location, age, and replacement/repair value provided by plaintiff. Doc. 36, att. 8. GeoVera maintains that this was not sufficient proof of loss, due in part to the fact that it had no evidence that many of the items were damaged. It also points to plaintiff's deposition, conducted on May 3, 2022. There plaintiff admitted that he had not had the televisions claimed on the list tested by an electrician. Doc. 27, att. 2, pp. 107–11. GeoVera points out that this deposition is also where plaintiff's alleged false statements regarding his prior notice of cracks in the living room slab occurred, giving the company reasonable grounds to suspend payments on the basis that he might have voided the policy. *See id.* at 56.

As the Fifth Circuit has held, "the insured carries the burden of persuasion to establish that any uncompensated (or under-compensated) damage was caused by a covered peril." *French v. Allstate Indem. Co.*, 637 F.3d 571, 590 (5th Cir. 2011). Accordingly, plaintiffs at all times "[bear] the burden of establishing the contents damaged and their value, and that [the covered peril] was the common cause of the damage." *Id.* at 591. Here plaintiff claimed coverage for a number of electronics and appliances, in addition to various items of furniture and mattresses. But the record does not show sufficient evidence from which GeoVera could determine that these were (1) damaged (2) by Hurricane Laura or Delta. Accordingly, plaintiff cannot establish under this motion that GeoVera received sufficient proof of loss such that its refusal to pay on the contents claim amounted to bad faith.

### 3. Failure to tender amount due

Plaintiff next contends that he is entitled to summary judgment based on GeoVera's failure to tender "the full amount due," as established by the estimate of his contractor Jeremy Burton, and for GeoVera's failure to pay ALE for a water pump allegedly damaged by a power surge after Hurricane Delta. GeoVera disputes that Burton's estimate provides satisfactory proof of loss, under the standards described above, and that it had a reasonable basis for denying ALE coverage due to plaintiff's inconsistent statements about whether he had running water during that time. It also maintains that any claim for ALE based on Hurricane Delta is not properly before the court, since plaintiff has not raised these allegations in his petition. On the latter point the court agrees but will nonetheless consider the issue for the limited purposes of this motion, since plaintiff fails to carry his burden at any rate.

The estimate from Burton is dated November 8, 2021, and shows a total of $339,310.00 in repairs. Doc. 36, att. 9. This includes "HVAC" at $18,767.00 and exterior repairs in the amount of $17,591.00. *Id.* GeoVera's post-Laura inspection report, on the other hand, provides no amount for HVAC repairs and only $4,244.22 (plus $240.41 recoverable depreciation) for repairs to the exterior perimeter of the home. Doc. 27, att. 3, p. 9. Burton's estimate, however, contains no proof that the HVAC system was damaged by the storm. Likewise, the estimate provides insufficient proof of the scope of damages to the exterior. Plaintiff cannot win summary judgment on his bad faith claim merely by showing that the estimates differed. Instead, establishing satisfactory proof of loss will

require contradictory testimony and weighing of opinions—in other words, it is the province of the jury.

As for the water pump, plaintiff argues that he was entitled to ALE coverage because his water pump was damaged by a power surge after Hurricane Delta and that GeoVera has yet to approve this coverage. A claims note from October 13, 2020, reflects that plaintiff advised his desk adjuster that he was without running water on the property due to a power surge. Doc. 36, att. 7, pp. 5–6. The adjuster responded by requesting that plaintiff "submit a specialist report indicating the failure was due to the storm and [he] can allow for reimbursement beyond the 14 day period [authorized due to the evacuation order for Hurricane Delta]." *Id.*

Plaintiff points to an email dated September 11, 2020, from claims manager Joseph Belton to other GeoVera employees, reflecting a looser approach to power failures. There Belton stated:

> We are starting to see some claims for personal property damaged by power surge when the power was restored to the property. This will be handled under the existing Laura claim. We are not setting up new claims for the insured. If possible, your IAs should verify that the item in question is not working. Use your best judgment. In most cases we will not require diagnostic reports. If the items are questionable, we may consider requesting one.

Doc. 36, att. 3, p. 4.

GeoVera maintains, however, that it was justified in requiring further information because of inconsistencies as to whether the house's electrical supply impacted its water. A claims note from September 1, 2020, reflects that the house had no power after Hurricane Laura but still had running water. Doc. 36, att. 7, pp. 2–3. In his deposition plaintiff also

admitted that the house had municipal water. Doc. 27, att. 2, pp. 69–70. Finally, plaintiff's desk adjuster Travis Plohocky testified that the field adjuster's report contained no evidence of a water pump on the property, let alone that one was damaged. Doc. 36, att. 6, pp. 63–64. Accordingly, he required additional information from plaintiff before authorizing coverage. *Id.* Plaintiff fails to show that he provided the requested information or any other additional documentation showing that he was displaced by Hurricane Delta. Based on this evidence, the court finds no basis for awarding summary judgment to plaintiff on bad faith arising from his ALE claim.

### 4. Lack of settlement offer

Finally, plaintiff contends that GeoVera is in bad faith for failing to make a written settlement offer within 30 days of receiving his property damage claim. This duty is only triggered, however, upon "receipt of satisfactory proofs of loss of that claim." La. Rev. Stat. § 22:1892(A)(4). Plaintiff generally alleges that "there were clear areas of the dwelling that were acknowledged as damaged but underpaid based on the estimates given to GeoVera[.]" Doc. 36, att. 2, p. 9. He fails to establish satisfactory proof of loss for the scope of that damage, however, or the cost of repair. Accordingly, the court cannot grant summary judgment on this claim.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 36] will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on the 28th day of September, 2022.

*[signature]*
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**